**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**RONNIE JOHNSON,**

       **Plaintiff,**                                  Case No. 04-74659

**vs.**                                              **HONORABLE DENISE PAGE HOOD**

**LAPEER COUNTY** and
**ROSS REYNOLDS, JR.,**

       **Defendants.**

_____/

**ORDER**

**I.**     **INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment filed October 14, 2005. Plaintiff filed an Answer on November 10, 2005 and Defendant filed a Reply on November 18, 2005.

Plaintiff Ronnie Johnson [hereinafter "Plaintiff Johnson"] alleges three counts against Defendant LaPeer County [hereinafter "Defendant LaPeer"] and Ross Reynolds, Jr. [hereinafter "Defendant Reynolds"]: (1) a claim against Defendant LaPeer County under the Michigan Whistleblower Protection Act, MCLA § 15.362, based upon Plaintiff's discharge; (2) a First Amendment claim pursuant to 42 U.S.C. § 1983 against Defendant Reynolds based on Plaintiff's January 2004 disciplinary probation and suspension; and (3) a First Amendment claim pursuant to 42 U.S.C. § 1983 against Defendant Reynolds based on Plaintiff's discharge.

1

Defendants ask this Court to grant the Motion for Summary Judgment alleging as to Counts Two and Three: (1) the speech for which Plaintiff was disciplined in January, 2004 was not a matter of public concern, but was related to his truthfulness and/or his preparedness to testify at the VanPaepegham trial, his failure to objectively handle the matter and interact appropriately with the prosecutor; (2) the government's interest in the efficiency of its officers conducting investigations and interacting with the prosecutor's office far outweighs Plaintiff's right to refuse to testify consistently with the information contained in its reports; (3) there is no protected speech interest in Plaintiff's action in the Pyonk matter; (4) there is no temporal proximity between the Pyonk matter and the VanPaepeghem matter; (5) Defendants have established that Plaintiff would have been discharged regardless of the incidents that took place during the VanPaepeghem case; and (6) there is no causation between Plaintiff's discharge and his claimed protected speech.  As to Count One, Defendant alleges that Plaintiff cannot establish that the VanPaepeghem matter played a substantial or motivating part in his discharge.

## II.   STATEMENT OF FACTS

### A.   Background

Plaintiff was a Detective Sergeant in the Lapeer County Sheriff's Department. (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. at 2).  The head of the Department is Sheriff Ron Kalanquin. Immediately subordinate to Sheriff Kalanquin at the time of Plaintiff's discharge was Undersheriff Defendant Reynolds.  Immediately subordinate to Defendant Reynolds was Plaintiff's supervisor, Lieutenant Gary Parks.  On November 4, 2004, Defendant Reynolds signed the memorandum announcing that Plaintiff was discharged.  *Id.*

**B.**     *People v. VanPaegeghem*

On March 14, 2002, Francis VanPaepeghem fatally shot Ron Weathers. *Id.* at 3. Plaintiff was summoned to the scene, as was Lieutenant Gary Parks. Although Plaintiff was not initially assigned the case, sometime before the preliminary hearing, he became the officer in charge. Lapeer County Prosecutor Byron Konschuh decided to prosecute Mr. VanPaepeghem for manslaughter. Prior to trial, Konschuh met briefly with Plaintiff. Plaintiff was called to testify at trial by both the prosecution and defense. Mr. VanPaepeghem was found not guilty of manslaughter. On October 21, 2003, Konschuh wrote a letter to the Lapeer County Sheriff's Department regarding Plaintiff. *Id.* at 7. As a result of the letter, Defendant Reynolds and Lieutenant Gary Parks performed an investigation. *Id.* at 8. Konschuh felt as if Plaintiff did not do a good job testifying at trial. *Id.* at 7. Lapeer County Prosecutor Byron Konschuh filed a formal complaint with Sheriff Kalanquin detailing his concern with Plaintiff's testimony.

On December 3, 2003, a Disciplinary Hearing was held to address Konschuh's letter. The hearing was attended by Lt. Parks, Executive Secretary Dorothy Kalar, POLC Representative Lloyd Whetstone, Defendant Reynolds, and Plaintiff. At the hearing, Plaintiff was told that "he did not respond consistently with his report and that the prosecutor relies upon its witnesses to be forthcoming with their responses." *Id.* at 9, Ex. 22. Lt. Parks also stated that Plaintiff was not forthcoming with his responses to the prosecutor, but volunteered information for the defense. *Id.* Plaintiff stated at the hearing that he told the truth at trial, and that he could not be disciplined for telling the truth. *Id.* Plaintiff was also criticized for the quality of his reports and accused of not being objective. *Id.* On January 7, 2004, Defendant Reynolds wrote a memorandum to Plaintiff placing him on one year probation and suspending him for two weeks without pay. (Pl.'s Br. In

3

Opp. to Def.'s Mot. for Summ. J. at 9, Ex. 23). The two week suspension was held in abeyance. Upon the successful completion of the probationary period, the suspension was to be dismissed.

### C. The Pyonk Matter

Mark Pyonk was Plaintiff's brother-in-law. On July 17, 2004, the LaPeer County Sheriff's Department with the assistance of Michigan State Police SWAT Unit responded to 4815 Briggs Road after Mary Pyonk called and stated that her husband was in the front yard and had a gun. Detective Jerry Gwyn was the investigating officer. The Department requested that Plaintiff speak with Mr. Pyonk in an attempt to calm the situation. Plaintiff did so and persuaded Mr. Pyonk to leave the residence and surrender himself to police. Detective Gwyn checked the handgun into the Property Room of the Sheriff's Department. *Id.* It is common practice for the LaPeer County Sheriff's Department to take weapons into custody for safekeeping in domestic violence situations. (Pl.'s Br. In Opp. to Def.'s Mot. for Summ. J. at 10; Defs.' Mot. for Summ. J. at 8).

On July 29, 2004, Mr. Pyonk came to the LaPeer County Sheriff's Department and asked to have his handgun returned. Clerk Linda Berdan advised the property clerk and Detective Sergeant Nancy Stimson that Mr. Pyonk was requesting the return of his handgun. (Defs.' Mot. for Summ. J. at 8). Mr. Pyonk had the handgun returned to his possession. *Id.* at 9. The day after Mr. Pyonk's handgun was returned to his possession, he abducted and sodomized his wife, Mary Pyonk, and subsequently committed suicide.

On September 13, 2004, Plaintiff received a Notice of Disciplinary Hearing. The Notice referenced Plaintiff's actions pertaining to the Pyonk matter. (Pl.'s Br. In Opp. to Def.'s Mot. for Summ. J. at 11; Ex. 29). The Notice also referenced Plaintiff's probation and two week suspension without pay resulting from his actions in the *VanPaepeghem* matter. *Id.* The hearing was held on

October 22, 2004. Defendant Reynolds. Lt. Parks, the attorney for LaPeer County, Shifman and Plaintiff attended the hearing. At the hearing, Plaintiff maintained that he was not being disciplined for the Pyonk matter, but for his testimony in the *VanPaepeghem* matter. (Defs.' Mot. for Summ. J. at 9).

On November 4, 2004, Defendant Reynolds issued a memorandum announcing Plaintiff's discharge. (Pl.'s Br. In Opp. to Def.'s Mot. for Summ. J. at 12; Ex. 9). In the memorandum, Defendant Reynolds indicates that Plaintiff was being discharged for his actions in the Pyonk matter. *Id.* Defendant Reynolds addresses Plaintiff's assertions that he was being retaliated against for his actions in the *VanPaepehem* matter. *Id.* Defendant Reynolds stated, "[y]our acceptance of the discipline at that time and your failure to raise this belated charge, by itself, should dispel this claim. But there is more. Those charges were appropriate and proper." *Id.*

### III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

5

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV.   APPLICABLE LAW & ANALYSIS

### A.   Liability of Defendant Reynolds

#### 1.   Defendant Reynolds' Authority

Defendants argue that Undersheriff Reynolds was not a decision-maker with authority to hire and fire Plaintiff and thus is not liable under 42 U.S.C. § 1983. (Defs.' Mot. for Summ. J. at 21). Plaintiff retorts that Defendant Reynolds clearly participated in the decision to discharge Plaintiff, as evidenced by his deposition testimony and the fact that he signed the letter discharging Plaintiff. (Pl.'s Answer to Def.'s Mot. for Summ. J. at 19-20, Ex.'s 7, 8). Defendants have presented the Court with no evidence to demonstrate that Defendant Reynolds did not have decision-making authority, thus there are questions of fact with regard to whether Defendant Reynolds can be relieved of liability based on this theory.

### 2.     **Qualified Immunity**

When qualified immunity is asserted, the district court must conduct a two-step inquiry. *Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2003). The first step is to decide whether the complaint alleges a violation of a constitutionally protected right. *Id*. (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). "[T]he next, sequential step is to ask whether the right was "clearly established" at the time of the violation. *Id*. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (citing *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (internal quotation marks and alteration omitted). "Although it need not be the case that the very action in question has been previously held unlawful, in light of pre-existing law, the unlawfulness must be apparent." *Id*.

Defendants argue that Defendant Reynolds is entitled to qualified immunity with regards to Plaintiff's First Amendment claims. (Defs.' Mot. for Summ. J. at 21). Defendants contend that there is no case law to support the proposition that disciplining Plaintiff for his inappropriate interactions with the prosecutor, as well as his inaccurate testimony during the *VanPaepeghem* trial, violate the First Amendment. *Id.* Defendants further argue that it is not reasonable to think that Defendant Reynolds would have understood that these actions violated a constitutional right. *Id.* at 22. Defendants also assert that because Plaintiff accepted his one year probation and as a result of his conduct in the Pyonk matter, Defendant Reynolds could not have known that making a recommendation to Sheriff Kalanquin for Plaintiff's termination would be violative of a constitutional right. *Id.*

Plaintiff argues that Defendant Reynolds' actions were a violation of the First Amendment. (Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J. at 22). Plaintiff contends that Defendant Reynolds testified at his deposition that he was aware that a public employee could not be discharged because he exercised his rights under the First Amendment. *Id.* at 21.

The deposition testimony of Defendant Reynolds indicates that he was aware that discharging a public employee for providing truthful testimony would be a violation of the individual's First Amendment rights. (Pl.'s Br. in Opposition to Defs.' Mot. for Summ. J. at 21). Although this testimony shows Defendant Reynolds' awareness of the law, it does not establish whether a reasonable officer would think that his actions violated the First Amendment. There is a genuine issue of material fact as to whether Defendant Reynolds is entitled to qualified immunity.

### B.     Plaintiff's First Amendment Retaliation Claims, 42 U.S.C. § 1983

In order to prove a claim for retaliation under 42 U.S.C. § 1983, a plaintiff must establish the following elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that he was subject to an adverse action that caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

#### 1.     Constitutionally Protected Activity

Public employee plaintiffs are required to meet additional standards to establish that the speech at issue is constitutionally protected. *Leary v. Deaschner*, 349 F.3d 888, 897 (6th Cir. 2003) (citing *Cockrel v. Shelby County Sch. Dist*, 270 F.3d 1036, 1048 (6th Cir. 2001)). First, a public employee plaintiff must demonstrate that the speech involved matters of public concern. *Id*.

Second, the plaintiff must show that her interest in addressing these matters of public concern outweigh the interest of her employer "in promoting the efficiency of the public services it performs through its employees." *Id*. (citing *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)). The *Pickering* balancing test must be used "[i]f any part of an employee's speech relating to a matter of public concern is a substantial or motivating factor in the adverse action." *Id*. (citing *Banks v. Wolfe County Bd. Of Educ.*, 330 F.3d 888, 893 (6th Cir 2003)). Whether speech addresses a matter of public concern is a question of law, however, inquiry into whether the employee's interests in speaking outweigh the employer's interests in regulating the employee's speech is a factual determination. *Id*. at 898; *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). If a plaintiff's speech does not address a matter of public concern, no further inquiry is necessary. *Barnes v. McDowell*, 848 F.2d 725, 733 (6th Cir. 1988).

In determining a public employee's rights of free speech, the problem is to arrive "at a balance between the interests of the [employee], as a citizen, in commenting on matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Meyers*[1], 461 U.S. 138 (1983) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). The Supreme Court has held that speech addressing a matter of public concern is that pertaining to "any matter of political, social, or other concern to the community." *Id.* at 146. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by

---

[1] Former assistant district attorney brought an action under 42 U.S.C. § 1983 alleging that she was wrongfully discharged because she had exercised her constitutionally protected right of free speech. The Supreme Court held that discharge did not violate attorney's constitutionally protected right of free speech.

the whole record. *Id.* A court must look to what was said rather than why it was said. *Banks*, 330 F.3d at 894-95. Generally, speech involves a matter of public concern when it involves "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 896 (6th Cir. 2001)

Defendant contends that Plaintiff's testimony in *People v. VanPaepeghem* was not constitutionally protected speech because "there is absolutely no case law to support the proposition that any testimony no matter how untruthful or inconsistent with the information contained in an officer's report . . . is protected by the First Amendment." (Defs.' Mot. for Summ. J. at 13). Defendant further argues that Plaintiff's testimony was both unsubstantiated and inaccurate and therefore is not entitled to First Amendment protection. *Id.* at 14-16.

Plaintiff argues that the content, form, and context of his testimony in *People v. VanPaepegham* touched on matters of public concern. (Pl.'s Br. in Opp. to Defs' Mot. for Summ. J. at 14). Specifically, the content of Plaintiff's speech concerned facts surrounding the death of Ronnie Weathers and the prosecution of VanPaepeghem and the form of his speech was sworn testimony in the context of a manslaughter trial. *Id.*

From a review of the record, there is no showing that Plaintiff testified untruthfully in the *VanPaepegham* trial. Moreover, the relevant inquiry is not the accuracy of Plaintiff's statements, but whether they touch on a matter of public concern. *See McGreal v. Ostrov*, 368 F.3d 657, 673 (7th Cir. 2004) (suggesting that an accusation that statements were made with reckless indifference as to their accuracy is not normally relevant to the question of whether the issue was a matter of public concern). Plaintiff testified in *People v. VanPaepegham* as a function of his duties as the

10

officer in charge of the investigation, as opposed to in a personal capacity. However, the content of Plaintiff's speech was not centered on the operation of government, but rather on the specific facts of the *VanPaepegham* trial. Although Plaintiff's speech is not the type generally falling under the rubric of matters of public concern, his statements are treated as if they address a matter of public concern. Namely, the discipline Plaintiff received subsequent to his trial testimony was centered around his alleged failure to cooperate with the Lapeer County Prosecutor's Office in the presentation of their case. Accordingly, Plaintiff has submitted sufficient evidence to withstand summary judgment as to whether his testimony in the *VanPaepegham* trial concerns a matter of public concern.

Defendants' argue that even if Plaintiffs trial testimony is entitled to First Amendment protection, the interest in enhancing the relationship between the Lapeer County Prosecutor's Office and Sheriff's Department, as well as enforcing the laws of the State of Michigan and County of Lapeer, outweigh Plaintiff's interest in testifying inconsistently with the information contained in his report. (Defs.' Mot. for Summ. J. at 16-17). Defendants assert that this governmental interest outweighs any First Amendment interest Plaintiff may have in his statements. The Court finds that there is a factual dispute as to whether this governmental concern outweighs Plaintiff's interests.

### 2. Adverse Action

To prevail on a retaliation claim, the plaintiff must show he was subject to an adverse action that caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity. *Bloch*, 156 F.3d at 678. Plaintiff need not have suffered loss of salary, promotional opportunities, seniority or other monetary deprivations to have a cognizable interest protected by the First Amendment. *Boger v. Wayne County*, 950 F.2d 316, 321 (1991).

Defendants assert that Plaintiff has not been subject to an adverse employment action because (1) the original suspension was held in abeyance; (2) Sherff Kalanquin testified that he did not believe the complaint of Byron Konschuh to be significant for purposes of establishing a severe punishment; and (3) Plaintiff testified at trials subsequent to the January 7, 2004 discipline. Plaintiff points to the initial suspension and probationary period and argues that this amounted to an adverse employment action. The Court finds that there is a factual dispute as to whether Defendants' actions constitute an adverse employment action.

### 3.   Motivating Factor in Plaintiff's Discharge

Once the public-employee plaintiff has met her burden and established a prima facie case, the burden of persuasion shifts to the defendant who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue. *Leary*, 349 F.3d at 898. Specifically, the employee must "point to specific, nonconclusory allegations reasonably linking her speech to employer discipline." *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003) (citing *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 602 (6th Cir. 2002)). If the employee meets that burden, the employer may "show by a preponderance of the evidence that it would have reached the same decision...even in the absence of the protected conduct." *Id*. (citing *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). However, this latter burden "involves a determination of fact" and ordinarily is "reserved for a jury or the court in its fact-finding role." *Id*. (citing *Perry v. McGinnis*, 209 F.3d 597, 604 n. 4 (6th Cir. 2000)).

Despite the fact that Defendants deny that Plaintiff's testimony in the *VanPaepeghem* in any way motivated their decision to terminate Plaintiff, in the November 4, 2004, memorandum issued

12

by Defendant Reynolds announcing Plaintiff's discharge, he stated, "[y]our prior disciplinary record further supports my decision to terminate your employment.". (Pl.'s Br. In Opp. to Def.'s Mot. for Summ. J. at 12; Ex. 9). This demonstrates that there is a question of fact as to Defendants' motivation in discharging Plaintiff.

Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment claims pursuant to 42 U.S.C. § 1983 is denied.

### B. Whistleblower Protection Act, MCL § 15.362

In order to make a prima facie case under § 2 of MCL 15.362, the Michigan Whistle-blower's Act[2] [hereinafter "WPA"], the plaintiff must show that: (1) he was engaged in protected activity as defined by the act, (2) the defendant discharged him, and (3) a causal connection exists between the protected activity and the discharge. *Smith v. Gentiva Health Servs.*, 296 F.Supp.2d 758, 762 (E.D. Mich. 2003) (citing *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210 (Mich. 1998)).

A protected activity under the [Whistle-blowers Protection Act] consists of: (1) reporting to a public body a violation of a law, regulation, or rule, (2) being about to report such a violation to a public body, or (3) being asked by a public body to participate in an investigation. *Manzo v. Petrella*, 683 N.W.2d 699, 712-13 (Mich. 2004). Plaintiff contends that his testimony in the

---

[2] An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to the law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. M.C.L. § 15.362.

13

*VanPaepeghem* case was protected under MCL 15.631(f) and MCL 15.362, and the cause of his termination. (Pl.'s Comp. at ¶¶ 30-31).

The WPA, as a remedial statute, is to be liberally construed to favor the persons the legislature intended to benefit. *Deneau v. Manor Care, Inc.*, 219 F.Supp.2d 855, 860 (E.D.Mich. 2002) (citing *Chandler*, 572 N.W.2d at 215)). Michigan courts have therefore interpreted the WPA to cover two types of "whistle-blowers." *Id*. A "Type 1 Whistle-blower" is one who, on [his] own initiative, takes it upon [himself] to communicate the employer's wrongful conduct to a public body in an attempt to bring the, as yet hidden, violation to light to remedy the situation or harm done by the violation. *Id*. at 860-861. "Type 2 Whistle-blowers" are those who participate in a previously initiated investigation or hearing at the behest of a public body. *Id*. at 861. *See also Henry v. City of Detroit*, 594 N.W.2d 107, 110-111 (Mich.App. 1999). Plaintiff asserts that he qualifies as a Type 2 whistle-blower.

In *Henry*, a former police commander brought an action against the city, its police chief, and deputy police chief, alleging his demotion and forced retirement violated the WPA. *Henry*, 594 N.W.2d at 107. Plaintiff was the chairman of the board of review overseeing the investigation of the death of Malice Green and recommending whether any officers involved should be criminally charged. *Id*. at 109. In a subsequent civil lawsuit by one of the officers acquitted of killing Malice Green, plaintiff testified that the departmental rules concerning the board of review were violated, and the board of review was not allowed to perform its duties. *Id*. In an unrelated matter, Plaintiff also testified before the Michigan Employment Relations Committee [hereinafter "MERC"] regarding the formation of a union by police inspectors and commanders. *Id*. Plaintiff claimed that his subsequent forced retirement was in retaliation for his civil lawsuit deposition testimony and his

MERC testimony. *Id*. at 110. The Defendants claimed that plaintiff was not engaged in a protected activity because his deposition testimony in the civil lawsuit was not a report to a public body. *Id*. The court agreed that the testimony was not a report to a public body, but found only that plaintiff was not a Type 1 whistle-blower. *Id*. The court however did find that plaintiff was a Type 2 whistle-blower. *Id*. The court stated:

> A deponent who (a) is an employee of the entity whose conduct is at issue, (b) has provided testimony by a deposition and, thereby, has "participated in a court proceeding", and (c) would be subject to a court-ordered subpeona to compel his attendance in any event, meets the definition of a type 2 whistle-blower.

*Id*. at 112.

In the instant case, Defendants assert that Plaintiff was not engaged in a protected activity. (Defs.' Mot. for Summ. J. at 21). Defendants further contend that Plaintiff cannot establish that the *VanPaepeghem* trial played any substantial or motivating part in his discharge. *Id.* Plaintiff contends that his responses to questions from both the prosecutor and the defense attorney in the *VanPaepeghem* trial constitute a protected activity within the WPA. (Pl.'s Answer to Def.'s Mot. for Summ. J. at 23-24). Plaintiff further argues that there is a causal relationship between the trial testimony and his discharge. *Id.*

Plaintiff has not presented the Court with sufficient evidence to demonstrate that his trial testimony falls within protected activity as defined by the WPA. Plaintiff's testimony in the *VanPaepeghem* trial pertained to the conduct of the defendant, Mr. VanPaepeghem, and Plaintiff's investigation of the matter. The conduct of Defendant LaPeer County was not at issue. It also does not appear that Plaintiff alleges that his statements at the disciplinary hearing initiated by the Lapeer County Prosecutor was a report to a public body and therefore establishes Defendant LaPeer

15

County's liability under the WPA. Plaintiff has made no showing that his actions amount to reporting a violation of a law, regulation or rule, as required by the WPA. *See Manzo*, 683 N.W.2d at 712-13. Accordingly, Defendants' Motion for Summary Judgment as to the claim under the WPA is granted.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment **[Docket No. 15, filed October 14, 2005]** is GRANTED in part and DENIED in part, granted as to Count I under the Whistleblower Protection Act, denied as to Counts II and III pursuant to 42 U.S.C. § 1983.

Dated: October 11, 2006          /S/ DENISE PAGE HOOD
Detroit, Michigan                UNITED STATES DISTRICT JUDGE

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing Order was served on the attorneys of record herein by electronic means or U.S. Mail on **October 11, 2006**.

s/Kim Grimes
Acting in the absence of
William Lewis, Case Manager